**Arthur J. GOLDBERG, Secretary of Labor, United States Department of Labor,**

v.

**S. R. MORGAN et al.**
**Civ. A. No. 4000.**

United States District Court
W. D. Louisiana,
Shreveport Division.

Aug. 28, 1961.

---

Earl Street, Regional Atty., and T. Hagan Allin, Trial Atty., U. S. Dept. of Labor, Dallas, Tex., for plaintiff.

Isaac Abramson, Wilson, Abramson, Maroun & Kaplan, Shreveport, La., for defendants.

BEN C. DAWKINS, Jr., Chief Judge.

This matter came on for trial to the Court on the 29th of January, 1959, petitioner appearing by T. Hagan Allin, Trial Attorney, and respondents appearing by their attorney, Mr. Isaac Abramson, and after hearing and considering the oral testimony and the evidence introduced by the respective parties, the stipulations and briefs, and being fully advised in the premises, we make the following Findings of Fact and Conclusions of Law based upon the record in this case:

Findings of Fact

I.

■ Petitioner, James P. Mitchell, acting in his official capacity as Secretary of Labor, United States Department of Labor, and as successor in interest to Martin P. Durkin, did on February 8, 1955, file a petition for prosecution for civil contempt, petitioning this Court to order that S. R. Morgan, Sr., and Charles E. Elkins be directed to appear before this Court and then and there to show cause why they should not be adjudged guilty of civil contempt of a final judgment of this Court dated September 11, 1953, as above styled, permanently enjoining and restraining respondent S. R. Morgan, Sr., his agents, servants, employees, and all persons acting or claiming to act in his behalf and interest from in the future violating the provisions of Section 15(a) (1), 15(a) (2), and 15(a) (5) of the Fair Labor Standards Act of 1938 (52 Stat. 1060, as amended, 29 U.S.C.A. § 201 et seq.), hereinafter referred to as the Act, in any of the following manners:

(1) Defendant shall not, contrary to Section 6 of the Act, pay any of his employees who are engaged in commerce or in the production of goods for commerce, as defined by the Act, from the date of this judgment, wages at rates less than 75 cents per hour. The provisions of this paragraph shall not prevent defendant from paying to any of his employees wages authorized as to such employees by a special certificate issued and in effect under Section 14 of the Act.

(2) Defendant shall not, contrary to Section 7 of the Act, employ any of his employees engaged in commerce or in the production of goods for commerce, as defined by the Act, for a workweek longer than 40 hours, unless the employee ·receives compensation for his employ-

ment in excess of 40 hours at a rate not less than one and one-half times the regular rate at which he is employed.

(3) Defendant shall not fail to make, keep, and preserve records of his employees, and of the wages, hours, and other conditions and practices of employment maintained by him, as prescribed by the regulations of the Administrator issued, and from time to time amended, pursuant to Section 11(c) of the Act, and found in Title 29, Chapter V, Code of Federal Regulations, Part 516.

(4) Defendant shall not, contrary to Section 15(a) (1) of the Act, ship, deliver, transport, offer for transportation, or sell in interstate commerce, as defined by the Act, any goods in the production of which any employee of the defendant has been employed at a rate of pay less than that specified in paragraphs (1) and (2) of this judgment.

### II.

In their responsive pleadings, respondents generally denied that they have violated any of the provisions of the judgment of this Court above referred to.

### III.

Respondent S. R. Morgan, Sr., resides in the City of Shreveport, Caddo Parish, Louisiana, within the jurisdiction of this Court, and was at all times material hereto, the operator of an ice plant located in the City of Shreveport, Louisiana, and an ice plant located at Vivian, Louisiana. Charles E. Elkins was a mere employee of Morgan, following his orders, and was not a "joint operator" with Morgan. At each of said establishments, respondent Morgan has at all times material hereto engaged in the production, sale and distribution of ice, substantial quantities of which were regularly shipped, sold, and delivered in interstate commerce from said establishments, to, into, and through other States other than the State of Louisiana, and particularly into the State of Texas.

### IV.

Petitioner alleges, and we so find as a fact, that since the entry of final judg-

ment by this Court in the injunction suit referred to in paragraph I, above, respondent S. R. Morgan, Sr., has failed and refused to obey and comply with the terms of the aforesaid judgment in that he has employed numerous employees both at the Shreveport and Vivian, Louisiana, establishments in the production of ice for interstate commerce, as that term is defined by the Act.

(a) That said employees have been compensated at hourly rates of less than 75 cents per hour for all hours worked by them, contrary to Sections 6 and 15(a) (2) of the Act.

(b) That said employees have been employed for workweeks longer than 40 hours, and respondent Morgan has failed and refused to compensate said employees for their employment in excess of 40 hours in such workweeks at rates not less than one and one-half times the regular rates at which they were employed, contrary to Sections 7 and 15(a) (2) of the Act.

(c) That respondent Morgan has failed to make, keep, and preserve adequate and accurate records of the persons employed by him and of the wages, hours, and other conditions and practices of employment, as prescribed by Section 11(c) of the Act and regulations of the Administrator promulgated pursuant thereto.

(d) That respondent Morgan has transported, offered for transportation, shipped, delivered, and sold in interstate commerce, or shipped, delivered, and sold with knowledge that shipment, delivery, or sale in interstate commerce was intended, goods produced by his said employees who were not compensated in accordance with the provisions of Sections 7 and 15(a) (1).

### V.

Respondent Morgan's time and pay roll records pertaining to his employees at both the Shreveport and Vivian, Louisiana, establishments were introduced in evidence and made a part of the record herein. An examination of these records reflects that in most respects respondents maintained records of hours worked

and total compensation, which on the face thereof would reflect compliance with the minimum wage and overtime provisions of the Act. However, even on the face of such records there are numerous instances which reflect non-compliance with the minimum wage and overtime provisions of the Act. The testimony of all employee witnesses and even that of respondent Morgan clearly establishes that the Vivian, Louisiana, plant was open and operating 12 hours a day during the winter months, and 24 hours a day during the summer busy season, which began sometime in April and ended in September. The testimony further reflects that the Vivian plant was open seven days a week and, therefore, during the winter season would be open a minimum of 84 hours each week.

The inadequacy and inaccuracy of the respondent Morgan's time and pay roll records is clearly reflected from the oral testimony in this case. Even though respondent Morgan admitted that between some time in April and through September of the so-called summer months, the Vivian establishment was open and operating 24 hours a day, seven days a week, neither petitioner's counsel nor this Court was able to obtain an admission from him that between July 3 and August 22, 1954, he had a night man in charge of the Vivian plant.

Further evidence of the unreliability of respondent Morgan's time and pay roll records at the Vivian establishment is reflected in the testimony of James E. Grady. This employee testified and his testimony was supported by the testimony of other employee witnesses that he started work for Mr. Morgan at Vivian when he was 15 years of age, which would have had him starting to work sometime prior to January, 1954. He testified that he continued to work for Mr. Morgan at Vivian through the summer of 1954 and until the plant quit producing ice. Nevertheless, respondent's time and pay roll records do not even show this employee on the pay roll throughout the period beginning January, 1954, and ending August 22, 1954.

Further evidence indicating the inaccuracy and inadequacy, if not the falsity, of respondent's time and pay roll records relates to time books introduced by defendant Morgan and purporting to reflect on a day-to-day basis the hours worked by the employees employed at the Shreveport establishment. Respondent Elkins testified that he personally maintained these records on a day-to-day basis from about May, 1953, through January, 1956. However, the physical condition of these books and the penmanship would not appear to affirm the testimony of respondent Elkins. Furthermore, such day-to-day records were kept in ink, yet for some unexplained reason, the permanent time and pay roll records introduced by the defendant are all in pencil.

VI.

All of the testimony of employee witnesses employed at the Vivian establishment reflects that they regularly worked an 11- 12-hour work day and 7-day workweek. The testimony of all the employees at the Shreveport establishment clearly establishes that each and every employee worked hours in excess of the hours with which they were credited and compensated with the number of such excess hours varying according to the best recollection of the individual employee witnesses which is understandable, due to the lapse of some four years or more having occurred since the period when the work was actually performed.

VII.

On the basis of the foregoing Findings of Fact V and VI, it is clear and we so find that respondent Morgan's time and pay roll records at both the Vivian and Shreveport establishments are wholly inadequate and inaccurate in that they do not in fact reflect the actual hours worked by the employees of such establishments on either a daily or a weekly basis, and in many instances do not even carry any record whatsoever as to some employees involved in this matter during periods when it is clear from all the evidence

that such employees were in fact employed by respondent Morgan.

## VIII.

■ It now becomes necessary to deal with the more difficult problem in this matter, and that is of determining the amount of underpayments which respondent Morgan should be required to pay as the result of his failure to properly compensate his employees in accordance with the terms and provisions of the final judgment of this Court rendered on September 11, 1953. In making the following Findings of Fact and in the absence of adequate and accurate records such as respondent Morgan was required under the Act and under the final judgment of this Court to keep, and did not keep, this Court has to a large extent relied upon the rule laid down by the Supreme Court in Anderson v. Mt. Clemens Pottery Company, 328 U.S. 680, 66 S.Ct. 1187, 90 L.Ed. 1515. It is clear from all the evidence of record herein that numerous employees of respondent Morgan employed at both the Shreveport and Vivian establishments have performed work for which they were improperly compensated, but the evidence is not adequate to show the exact amount and extent of such work. Consequently, we must and do estimate that the following named employees are due the amounts set opposite their names, to be paid by respondent Morgan, as hereinafter set forth:

| | | |
|---|---|---|
| 1. | Tom Parker ........... $ | 165.00 |
| 2. | Dick Bethany .......... | 500.00 |
| 3. | James E. Grady ........ | 400.00 |
| 4. | Willie Daniels ......... | 350.00 |
| 5. | Flournoy Washington ... | 600.00 |
| 6. | Ashley Rambo ......... | 500.00 |
| 7. | Claude C. Davis ........ | 550.00 |
| | Total ......... $ | 3,065.00 |

Since they did not testify, the evidence is insufficient to justify any penalties with respect to O. J. "Rock" Harris and Ellis June.

## IX.

We find that respondent Morgan has between September 11, 1953, and September 29, 1954, produced, shipped, delivered, transported, offered for transportation, and sold in interstate commerce from his said places of business to other States, goods in the production of which the employees referred to in the Findings of Fact VIII were employed in violation of the minimum wage provision of Section 6 and the overtime provision of Section 7 of the Act.

## X.

It was stipulated between the parties, and we so find, that the costs and expenses to petitioner herein in investigating, maintaining, and prosecuting this action were as follows:

| | |
|---|---|
| Mr. Harry Campbell, Jr., Attorney | $454.20 |
| Mr. Joseph P. McAuliffe, Investigator | 138.43 |
| Mr. T. Hagan Allin, Attorney | 128.50 |
| Total | $721.13 |

### Conclusions of Law

#### I.

The Court has jurisdiction of the parties and the subject matter of this proceeding.

#### II.

Respondent Morgan's employees referred to in the foregoing Findings of Fact were during all such times engaged in the production of goods for interstate commerce, or in occupations closely related or directly essential thereto.

#### III.

Respondent Morgan is adjudged guilty of contempt of this Court in that he has failed and refused to comply with the final judgment entered by this Court on September 11, 1953, by virtue of his having violated the provisions of Sections 6 and 7, 15(a) (2), 11(c), 15(a) (5), and 15(a) (1) of the Act and of the said

final judgment of this Court as set forth in the foregoing Findings of Fact.

VI.

Respondent S. R. Morgan, Sr., shall pay to each of the employees named the amounts found due in Findings of Fact VIII, as follows:

| Name | Amount |
| --- | --- |
| Tom Parker | $ 165.00 |
| Dick Bethany | 500.00 |
| James E. Grady | 400.00 |
| Willie Daniels | 350.00 |
| Flournoy Washington | 600.00 |
| Ashley Rambo | 500.00 |
| Claude C. Davis | 550.00 |
| | $3,065.00 |

Petitioner herein is entitled to a decree so ordering.

V.

The respondent herein, S. R. Morgan, Sr., is further ordered to pay a compensatory fine in the sum of $721.13 to reimburse the petitioner, in part, for his reasonable costs and expenses in the investigation of respondent's operations and in the prosecution of this civil contempt action, together with the costs of this action.